UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY P. HERINGTON,

                    Petitioner,                    **DECISION AND ORDER**
                                                   No. 06-CV-6079

          -vs-

THOMAS M. POOLE,
Superintendent, Five Points Correctional Facility,

                    Respondent.
_____


## I.    INTRODUCTION

Pro se petitioner Timothy P. Herington ("Herington" or "Petitioner") filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the constitutionality of his custody following his conviction in New York State County Court, County of Livingston, after a jury trial, on eight counts of sodomy in the second degree (New York Penal Law ("Penal Law") 130.45[1]).

For the reasons set forth below, the petition is denied.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

Petitioner's conviction rests on facts found by the jury showing that he repeatedly sexually abused his step daughter, K.B.,

when she was only ten-years-old.[1]  K.B. testified that her mother
married Petitioner in 1992 and that they divorced five to seven
years later.  Trial Tr. ("T.") 535.  She went on to testify that
when she was in the third grade, she moved into a trailer home with
her mother, Petitioner, and Petitioner's son.  T. 536-537.  In 1996
when K.B. was ten, Petitioner and K.B.'s mother had a daughter.
T. 537.  About the same time that the daughter was born in
September 1996, Petitioner and K.B. were riding in Petitioner's
truck.  Petitioner asked K.B., now in the fifth grade, if she had
ever watched pornographic movies.  K.B. said no.  Petitioner asked
if she wanted to, and told her that since he liked to watch them
late at night, K.B. could "take a glance" at the videos because she
could see the television from her bedroom.  T. 537-539, 542.

One night after this conversation, Petitioner came into K.B.'s
bedroom and asked if she had watched the pornographic videos.  She
said no, and Petitioner responded by telling her to "take a glance
out the door when I go back in the living room."  T. 540-541.  K.B.
did as Petitioner asked and stood by her door to watch the video
for a couple of minutes before going back to bed.  Id.  After she
returned to bed, Petitioner came into her room, asked her if she

<hr />

[1] As respondent requested, and in accordance with this
Court's order to seal the state records to protect the identity
of the complainant, the complainant is hereinafter referred to as
"K.B." or the "Victim".  Docket Nos. 5, 18.

liked the video, and proceeded to touch her vagina underneath her clothes while he masturbated. T. 541-542.

Over the next month, Petitioner continued and escalated his abuse by putting his mouth on K.B.'s vagina and having K.B. put her mouth on his penis, telling her to "go back and forth with [her] mouth on his penis." T. 542, 545. Petitioner abused K.B. at night while her mother was asleep in the back bedroom of the trailer with the couple's baby daughter. T. 543. At the outset of his abuse, Petitioner told K.B. that if she told anyone, no one would believe her and it would break up the family. T. 544.

Petitioner continued his pattern of abuse "three or four times a week." T. 545, 551-552. Each time, Petitioner would instruct K.B. to watch a pornographic film, and then he would enter her bedroom and put his mouth on her vagina and she would put her mouth on his penis. T. 545-546. K.B. was ten years old when the abuse started and turned eleven during the course of the abuse. T. 551-552. Petitioner's sexual abuse of K.B. continued for about a year and stopped only when K.B.'s mother kicked Petitioner out of the trailer following a fight between the two, during which K.B. was knocked to the floor while trying to intervene, whereby she accidentally hit her little sister in the eye with her elbow leaving the little girl with a black eye. T. 546-550. After Petitioner moved out, K.B. did not have direct, one-on-one contact with him, except for one occasion in a public setting. T. 550.

In 1997, during the period of abuse and just before she began sixth grade, K.B. told a close friend that Petitioner sexually abused her. T. 554-555. Then, in 1998 at the beginning of seventh grade, K.B. told her mother a portion of the "story" of how petitioner abused her. T. 556. Her mother called the police to come to the house to speak with K.B., but K.B. did not tell the police everything because she was embarrassed and "didn't want to go to court." T. 556-557. K.B. subsequently went through counseling, after which she realized the abuse was not her fault, and that she should not be embarrassed. T. 558. In 2002, K.B. again spoke with the police and was then able to inform them of the nature of the abuse. T. 557.

At the outset of its case against Petitioner, the prosecution notified the court prior to jury selection that it intended to call Dr. David Coron as an expert witness to testify about "Child Abuse Accommodation Syndrome" ("CAAS").[2] T. 9. The prosecution said that Dr. Coron's testimony was necessary because it dealt with information beyond the scope of a juror's common knowledge and that he would simply "discuss and educate the jury as to Child Abuse Accommodation Syndrome" and would not rely on hypothetical examples

_____

[2] As explained by Dr. Coron's testimony, CAAS is a "widely accepted" conceptualization in the field of psychology based on practice and supervision that addresses the way children cope with trauma. T. 507-524. Secrecy, helplessness, accommodation, and partial disclosures or recantation are the four stages of CAAS syndrome. T. 517-521.

similar to the Victim's experiences. T. 9. Defense counsel argued that Dr. Coron should not testify before the Victim because the jury would be confused and unable to assess the expert's testimony without hearing from the Victim first, and that counsel "would have to continually...refer to what I expect...the testimony of the complainant might be in order to ask [Dr. Coron] questions." T. 11-12. The court declined to direct the prosecution to call witnesses in any particular order. T. 31, 481-482.

After jury selection, the defense again objected to Dr. Coron's testimony claiming that it could only be presented "in response to the suggestion by the defense that the inconsistencies in the [Victim]'s reporting or the recantations...indicate that she's not telling the truth." T. 410. The defense further moved to preclude Dr. Coron's testimony unless the court held a Frye/Daubert hearing to "determine how it can be admissible on direct." T. 410-411. The trial court denied the defense's objections to Dr. Coron's testimony. T. 416-418. Before the people presented Dr. Coron, the defense advised the court that it intended to "reserve [its] cross-examination" of Dr. Coron for when it intended to call him as its own witness. T. 482. The trial court refused to recall Dr. Coron for cross-examination after the Victim's testimony, and the defense never called Dr. Coron directly. T. 415(b), 524-528.

**B.    Procedural History: State Court Proceedings**

After his conviction, Petitioner filed an appeal with the New York State Supreme Court, Appellate Division, Fourth Department, and raised the following grounds: (1) the trial court committed reversible error by allowing the prosecutor to introduce highly sensitive expert testimony prior to any fact witness[3]; (2) the verdict was against the weight of the evidence; (3) defendant's guilt was not proven beyond a reasonable doubt; (4) the trial court committed reversible error by preventing the appellant from introducing exculpatory evidence at trial; and (5) the sentence was harsh and severe.  Resp't Ex. A (Br. for Appellant) at 4.[4]  The Appellate Division affirmed Petitioner's conviction.  People v. Herington, 11 A.D.3d 931 (4th Dept. 2004).  Petitioner sought leave to appeal to the New York Court of Appeals raising the same grounds as he did in the Appellate Division, but leave was denied.  People v. Herington, 4 N.Y.3d 799 (2005).

---

[3] The first claim was separated into three sub-claims as follows: (1)(a) The trial court failed to properly exercise discretion; (1)(b) CAAS lacks a proper scientific basis and thus expert testimony regarding CAAS was improperly received into evidence without a <u>Frye</u> hearing; (1)(c) Admission of expert CAAS testimony prior to that of the Victim deprived appellant of due process of law because it: (i) prevented appellant from properly challenging the credibility of the complainant, and (ii) prevented appellant from properly challenging the credibility of the expert.  Resp't Ex. A (Br. for Appellant), p. 16-29.

[4] Respondent filed exhibits in connection with its memorandum of law in opposition to the petition for habeas corpus.  These exhibits are referenced as "Resp't Ex.__".

Petitioner then filed the instant petition for a writ of habeas corpus. "Pet." (Docket No. 1).

## III. GENERAL PRINCIPLES APPLICABLE TO HABEAS REVIEW

### A.   The Standard of Review for Habeas Corpus Petitions

In reviewing a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, federal district courts must make an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution or any laws and treaties of the United States. Coleman v. Thompson, 501 U.S. 722, 730 (1991), reh'g denied, 501 U.S. 1277 (1991).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in 28 U.S.C. § 2254(d), when reviewing habeas claims of petitioner's who were convicted in state court, the federal habeas court may not grant relief from state court decisions that were "adjudicated on the merits" unless the decisions were:

> contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ...
>
> based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).   "Clearly established" federal law "refers to the holdings, as opposed to the dicta of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000).

The Supreme Court has interpreted § 2254(d)(1) as giving independent meanings to both the "contrary to" and "unreasonable application" clauses. <u>Id.</u> at 404. A state court decision is "contrary to" Supreme Court precedent only if it either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result]." <u>Id.</u> at 405. A state court decision is an "unreasonable application" of Supreme Court precedent if it:

> Identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts ... [or] unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

<u>Id.</u> at 407. This standard applies even where the state court decision was a summary affirmance of the conviction that did not explicitly reject the Federal claim, as long as the decision necessarily determined the claim. <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001).

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." <u>Taylor</u>, 529 U.S. at 411.

The Second Circuit has explained that in order to grant the writ, there must be "[s]ome increment of incorrectness beyond error..." in the state court's adjudication of the claim, although "...the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

### B. The Exhaustion Requirement

The habeas statute provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Typically, this means that federal habeas claims must have been included in both the petitioner's appeal to the state's intermediate appellate court and in an application for permission to appeal to the state's highest court. Id. at 848. The federal court must assess whether the petitioner has "properly exhausted" his state remedies by "fairly present[ing]," id., to the state court "both the factual and legal premises of the claim he asserts in federal court." Daye v.

_Attorney General of New York_, 696 F.2d 186, 191 (2d Cir. 1982);

_accord_  _Jones v. Vacco_, 126 F.3d 408, 413 (2d Cir. 1997).

Failure to exhaust may be excused, however, if the petitioner shows cause and prejudice.  _Wainright v. Sykes_, 433 U.S. 72, 87-88 (1977); _Murray v. Carrier_, 477 U.S. 478, 485 (1996).  For example, "[w]hen a petitioner has not properly presented his claim to a state court for consideration on the merits, but 'it is clear that the state court would hold the claim procedurally barred,' a federal habeas court need not require that the claim be presented to a state court."  _Lloyd v. Walker_, 771 F.Supp. 570, 574 (1991) (quoting _Harris v. Reed_, 489 U.S. 255, 263 n. 9 (1989)); _see also_ _Grey v. Hoke_, 933 F.2d 117, 119, 120-121 (2d Cir. 1991).

If the petitioner is procedurally barred from asserting the claim in state court, then the claim is deemed exhausted, but procedurally defaulted for habeas purposes.  For federal courts to hear a procedurally defaulted claim on habeas review, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  _Aparicio v. Artuz_, 269 F.3d 78, 90 (2d Cir. 2001)(citing _Coleman_, 501 U.S. at 748-50).

### C.  The Independent and Adequate State Grounds Doctrine

"Under the independent and adequate state grounds doctrine, the Supreme Court 'will not review a question of federal law

decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman, 501 U.S. at 729). "'This rule applies whether the state law ground is substantive or procedural.'" Id. A procedural bar is "adequate" if it is based on a rule that is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d. 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-424 (1991)). Whether application of the procedural rule is "firmly established and regularly followed" must be judged in the context of "the specific circumstances presented in the case...." Cotto, 331 F.3d at 240 (Citing Lee v. Kemna, 534 U.S. 362, 386-387 (2002)); Hawthorn v. Lovorn, 457 U.S. 255, 263 (1982)("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims.")

Further, "federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (citing Coleman, 501 U.S. at 749-50; Harris v. Reed, 489 U.S. at 262. In order to bar federal review, "[t]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the

case." <u>Harris</u>, 489 U.S. at 261-62 (internal quotation marks and citation omitted). Since "it can be 'difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference,' <u>Coleman</u>, 501 U.S. at 732, such reliance on state law must be 'clear from the face of the opinion[,]' <u>Id.</u> at 735." <u>Fama</u>, 235 F.3d at 809.

## IV.  PETITIONER'S CLAIMS

Petitioner raises the following grounds for habeas relief: (1) he was effectively denied his Sixth Amendment right to counsel when the trial court permitted the prosecution to present Dr. Coron's expert witness testimony before its fact witness which deprived defense counsel the opportunity to cross-examine Dr. Coron; (2) the trial court's constructive denial of the opportunity for defense counsel to cross-examine Dr. Coron in any meaningful way effectively denied Petitioner his Sixth Amendment right to compulsory process for obtaining a witness in his favor; (3) defense counsel's inability to effectively cross-examine Dr. Coron denied Petitioner due process under the Fifth and Fourteenth Amendments; and (4) Petitioner was denied due process under the Fifth and Fourteenth Amendments when the trial court allowed expert testimony without first conducting a Frye hearing pursuant to Frye v. U.S., 293 F. 1013 (D.C. Cir. 1923).  Pet. ¶24(A-D).

**A. Petitioner's Request for Stay-and-Abeyance.**

On May 31, 2006, respondent submitted its memorandum of law in opposition to the petition ("Resp't Mem."). Respondent claimed that, while Petitioner's third and fourth claims were properly exhausted for the purposes of habeas review, his first and second claims were unexhausted because Petitioner failed to raise them in the state court review process. Resp't Mem. at 14-15, 16. Additionally, respondent asserted that the unexhausted claims were, in any event, without merit. Id. On September 1, 2006, Petitioner filed a motion to stay the habeas proceedings requesting the Court to allow him to pursue his unexhausted claims in state court. Pet'r Mot. to Stay (Docket No. 10). On October 11, 2006, respondent filed a response to Petitioner's motion arguing that the Court should deny a stay because Petitioner made no showing of "good" cause for his failure to exhaust, and in any event, the unexhausted claims were meritless. Respondent's Response to Pet'r Mot. to Stay (Docket No. 11) (citing Rhines v. Weber, 544 U.S. 269, 277-278 (2005)).

On January 3, 2007, the Court entered an order regarding the request for a stay. Decision and Order (Docket No. 13). The Court noted that before determining whether Petitioner was entitled to a stay, it had to address whether the petition contained both exhausted and unexhausted claims, thereby making it a "mixed

petition" eligible for a stay.  Id. at 2 (citing Zarvela v. Artuz,
254 F.3d 374 (2d Cir. 2001)).  In discussing the first two claims
in the Petition which respondent asserted were unexhausted, the
Court noted that in Petitioner's appellate brief, he:

> ...argued that, during the trial, the placement
> of the expert witness's testimony prior to that
> of the fact (complaining) witness improperly
> restricted cross examination of both witnesses.
> Prior to trial, defense counsel had objected to
> both the expert's testimony and to the placement
> of the testimony....
>
> In the instant petition, the first ground for
> relief is that the petitioner was 'effectively
> denied his Sixth Amendment right to have counsel
> aid him in his defense by virtue of the trial
> court permitting the prosecution to present
> testimony from its expert witness before its
> fact witness, thereby depriving trial counsel of
> the opportunity to cross-examine [the expert].'
> Petitioner's second ground is that 'the trial
> court's constructive denial of the opportunity
> for defense counsel to cross-examine expert
> witness [...] in any meaningful way effectively
> denied petitioner his Sixth Amendment right to
> a compulsory process for obtaining witnesses in
> his favor.'

Decision and Order at 3-4 (Docket No. 13) (quoting Pet. ¶24(A),
(B)).  In light of the differing manner in which Petitioner's
claims were phrased in his appellate brief and habeas petition, and
in consideration of Petitioner's pro se status in this proceeding,
the Court found that it was uncertain whether the Petitioner had
"fairly presented" his first two habeas claims in the state courts
by alerting "the state court to the constitutional nature of [the]

claim[s]...". Decision and Order at 4-5 (Docket No. 13). The
Court therefore ordered that the parties "clarify their positions
regarding the exhaustion of the first two claims raised in the
petition." Id. at 5.

On January 30, 2007 and February 12, 2007 respondent and
Petitioner respectively submitted responses to the Court's order.
Docket Nos. 14, 17. After considering the parties' arguments, the
Court issued a Decision and Order on March 5, 2007 as to the status
of the petitioner's claims and ultimately denied the stay.
Decision and Order (Docket No. 18). The Court found that
respondent "concedes exhaustion with respect to petitioner's Sixth
Amendment confrontation clause and Fourteenth Amendment due process
claims regarding the expert witness's testimony, which respondent
further concedes includes the compulsory process claim" (i.e.,
Petitioner's second, third, and fourth habeas claims). Id. at 1.
Therefore, the only claim remaining in the petition for which
respondent had not conceded exhaustion was Petitioner's first claim
that he was effectively denied his Sixth Amendment right to
counsel. The Court acknowledged that, because Petitioner appeared
pro se, the Court must characterize his claim "according to the
relief sought, and not the label given" to it by Petitioner. Id.
at 2. The Court then found that "...much of petitioner's instant
challenges to his conviction are encompassed by those claims for

which [r]espondent has conceded exhaustion. Thus, the contest regarding exhaustion is limited solely to petitioner's framing of his [first habeas] challenge as a claim of ineffective assistance of counsel." Id.

With respect to this claim, the Court found that "[c]learly, petitioner is relying on the same facts regarding the expert witness's testimony for his instant challenge" as he did in his direct appeal where he argued a denial of due process. Id. However, "...while the facts upon which the [first claim in the] petition rests are indistinguishable from those petitioner raised on direct appeal, the legal argument that the trial counsel was deficient was not presented or raised by these facts." Id. "Indeed, petitioner does not attribute the ineffectiveness of his counsel to any acts or omissions of his trial counsel, but rather claims that the trial court's denials of counsel's requests and over-ruling of objections resulted in a denial of effective representation." Id. Therefore, inasmuch as Petitioner was trying to assert "a separate ineffective assistance of counsel claim that is somehow distinguishable from the exhausted claims presented in his petition, such a claim" would be deemed exhausted but procedurally defaulted for habeas purposes. Id. at 3 (citing Grey v. Hoke, 933 F.2d 117, 120-121). As a result, the Court found that

the "petition is not a 'mixed petition' subject to the needs of a stay" and denied the Petitioner's request.

**B.    Merits of Petitioner's Claims**

### 1.    Trial court's alleged denial of Petitioner's right to effective assistance of counsel.

As noted above, Petitioner's contention is that he was effectively denied his Sixth Amendment right to counsel when the trial court permitted, over his counsel's objections, the prosecution to present Dr. Coron's expert witness testimony before the Victim's testimony, which deprived defense counsel the opportunity to cross-examine Dr. Coron.  Pet. ¶24(A).  As previously determined by the Court, this claim - to the extent that Petitioner is now trying to assert an ineffective assistance of counsel claim - is deemed exhausted but procedurally defaulted. Decision and Order at 2-3 (Docket No. 18).  Petitioner did not raise the issue on direct appeal and since he could have raised the issue on direct appeal but did not, he cannot now raise it on collateral review.  New York Criminal Procedure Law § 440.10(2)(c).

On habeas review, "[w]hen a petitioner has not properly presented his claim to a state court for consideration on the merits, but 'it is clear that the state court would hold the claim procedurally barred,' a federal habeas court need not require that the claim be presented to a state court."  Lloyd v. Walker, 771 F.Supp. 570, 574 (quoting Harris v. Reed, 489 U.S. 255, 263 n. 9);

see also Grey v. Hoke, 933 F.2d 117, 119, 120-121.  If a Petitioner is procedurally barred from asserting a claim in state court, the claim is deemed exhausted but procedurally defaulted for habeas purposes.   See Grey, 933 F.2d at 120-121.  Before a federal court may review a procedurally defaulted claim on habeas review, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  Aparicio v. Artuz, 269 F.3d 78, 90 (citing Coleman, 501 U.S. at 748-50).  Because Petitioner makes no such showings, this claim, inasmuch as it asserts that Petitioner's counsel was ineffective, may not be addressed on the merits and is denied.[5]

### 2.  **Expert testimony admitted without a Frye hearing**

Petitioner claims that allowing Dr. Coron's expert testimony regarding CAAS symptoms without first conducting a Frye hearing denied him his right to due process.  Pet. ¶24(D).  On direct appeal, Petitioner claimed that because "...CAAS lacks a proper scientific basis, the expert testimony regarding CAAS was improperly received...."  Resp't Ex. A (Br. for Appellant) at 19.

---

[5] Assuming that Petitioner did not intend to argue that his counsel was ineffective, but instead, meant to assert that the trial court's evidentiary rulings regarding Dr. Coron's testimony effectively denied him the right to put on a defense by improperly interfering with his counsel's ability to cross-examine (or confront) Dr. Coron., this claim also fails as discussed more thoroughly below.

Specifically, Petitioner asserted on appeal that "[t]o be admissible at trial, scientific evidence must be reliable and generally accepted by the scientific community either by a prior court finding or a finding by the trial court (after a _Frye_ hearing) and have a proper foundation laid at trial.[6] _Id._ at 19-20. Petitioner contended that CAAS lacks the requisite scientific basis and thus Dr. Coron's testimony was not admissible without a separate determination under a _Frye_ hearing as to its admissibility. Id. at 24.

Petitioner asserts the same claim before this Court. Pet. ¶24(D). In general, a state court's evidentiary rulings, even if erroneous under state law, are not cognizable in a federal habeas corpus petition. Crane v. Kentucky, 476 U.S. 683, 689-690 (1986). Before a federal habeas court may review evidentiary errors, a petitioner must show that said errors were so pervasive as to have denied him a fair trial. U.S. v. Agurs, 427 U.S. 97, 108 (1976).

The Appellate Division found that the trial court's evidentiary rulings were not erroneous. The court held that, "[c]ontrary to defendant's contention, County Court properly admitted expert testimony concerning child sexual abuse accommodation syndrome for the purpose of explaining why a child

---

[6] _Frye v. U.S._ requires that the basis from which expert testimony is deduced must be "sufficiently established to have gained general acceptance in the particular field in which it belongs." 293 F. 1013, 1014.

might not immediately report an incident of abuse." Herington, 11 A.D.3d 931 (citing People v. Carroll, 95 N.Y.2d 375, 387 (2000)). Additionally, the court stated that "'a Frye hearing was unnecessary because the expert [] testimony did not involve novel scientific evidence.'" Herington, 11 A.D.3d at 931 (quoting People v. Middlebrooks, 300 A.D.2d 1142, 1143 (2002), lv denied 99 N.Y.2d 630 (2003)).

The Appellate Division's findings with regard to the trial court's decision to admit Dr. Coron's testimony without a Frye hearing establishes that there were no clear errors of state evidentiary law. Since there was no evidentiary error, Petitioner has not alleged an error that gives rise to a constitutional infirmity. Habeas review is therefore precluded as to this claim because there were no evidentiary errors of a federal constitutional magnitude. See Estelle v. McGuire, 502 U.S. 62, 68 (1991); Johnson v. Burge, No. 04-CV-6101T, 2009 WL 3064878 at *7 (W.D.N.Y. September 22, 2009) (holding that where the Appellate Division rejected the petitioner's evidentiary claims, there were no errors of state evidentiary law and thus no errors that "would rise to constitutional infirmities.").

### 3. Defense counsel's inability to effectively cross-examine Dr. Coron

Petitioner contends that his defense counsel's inability to effectively cross-examine Dr. Coron denied him his right to due

process under the Fifth and Fourteenth Amendments. Pet. ¶24(C). In his appellate brief, Petitioner contended that his Sixth Amendment right to confrontation was violated when the trial court allowed Dr. Coron's expert testimony prior to that of the Victim. He asserted that so doing improperly restricted his right to cross-examine both witnesses. Resp't Ex. A (Br. for Appellant) at 25-29. In his petition, Petitioner claims only violations with respect to his opportunity to cross-examine Dr. Coron. Pet. ¶24(C).

Regarding Dr. Coron's expert testimony, Petitioner argued to the Appellate Division that allowing the expert to testify before the Victim prejudiced him in two ways: (1) the nature of Dr. Coron's testimony allowed "the jury to anticipate inconsistencies in the complainant's testimony" and (2) it prevented effective cross-examination "because no facts were present before the jury" thus limiting the scope of cross-examination to the realm of the hypothetical. Resp't Ex. A (Br. for Appellant) at 28-29; T. 28-29, 9-13, 524-528. As a result, defense counsel requested that the trial court allow him to recall Dr. Coron for cross-examination after the Victim's testimony, but the court denied the request. Resp't Ex. A (Br. for Appellant) at 29; T. 527. This, according to Petitioner, "improperly deprived" him of the "opportunity to cross-examine

Dr. Coron" which deprived him of the opportunity to confront the expert. Resp't Ex. A (Br. for Appellant) at 29.

Petitioner asserts substantially the same contentions in this habeas proceeding that he raised in the Appellate Division. The Court notes that Petitioner specifically claims Fifth and Fourteenth Amendment due process violations stemming from his defense counsel's "inability...to effectively cross-examine" Dr. Coron. Pet. ¶24(C). However, after reading Petitioner's appellate brief, it appears that he is actually asserting that he was denied his Sixth Amendment right to confrontation when his defense counsel could not "effectively cross-examine" Dr. Coron because: (1) Dr. Coron was allowed to testify before the Victim, and (2) because the trial court would not permit recall of Dr. Coron for cross-examination after the Victim testified. Therefore, Petitioner's claim is analyzed as a denial of his Sixth Amendment right to confrontation which, in turn, denied Petitioner due process under the Fifth and Fourteenth Amendments. See Treistman v. Fed. Bur. of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to r\aise the strongest arguments that they suggest")(internal quotation marks and emphasis omitted).

### a.     Allowing Dr. Coron's testimony prior to the testimony of the Victim.

The Appellate Division concluded that "the expert testimony was properly admitted during the People's case-in-chief and prior to the testimony of the complainant in order 'to set the stage before [she] testifie[d].'" Herington, 11 A.D.3d at 931 (quoting People v. Parks, 41 N.Y.2d 36, 49 (1976)). As a result, like the previous claim dealing with the admissibility of Dr. Coron's testimony without a Frye hearing, there were no clear errors of state evidentiary law in allowing Dr. Coron to testify prior to the Victim. Since there were no evidentiary errors, Petitioner has not alleged any error that gives rise to a constitutional infirmity. Habeas review is therefore precluded because there were no evidentiary errors of a federal constitutional magnitude. See, Estelle v. McGuire, 502 U.S. at 68; Johnson v. Burge, No. 04-CV-6101T, 2009 WL 3064878 at *7.

### b.     The trial court's refusal to allow the defense to recall Dr. Coron for cross-examination after the Victim's testimony.

The Appellate Division did not rule on the merits of this issue because its decision addressed only the issue of Dr. Coron's testimony prior to the victim's testimony and did not specifically address the trial court's refusal to allow the defense to recall the expert at a later time. Accordingly, because this issue was not "adjudicated on the merits", the Court can not apply the AEDPA

standard, and will analyze the claim de novo. "If the [state] claims have not been adjudicated on the merits, the federal court applies the pre-AEDPA *de novo* review standard...." Knight v. Walsh, 524 F.Supp.2d 255, 274 (W.D.N.Y. 2007)(citing Sellan v. Kuhlman, 261 F.3d at 314; Boyette v. Lefevre, 246 F.3d 76, 89, 91 (2d Cir. 2001)).

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witness against him...." U.S. Const. amend. VI. The main purpose of the right to confrontation is "to secure for the opponent the opportunity of cross-examination." Davis v. Alaska, 415 U.S. 308, 315-316 (1974). However, "'...trial judges retain wide latitude, insofar as the Confrontation Clause is concerned to impose reasonable limits on...cross-examination, based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); See also Harper v. Kelley, 916 F.2d 54, 57 (2d. Cir. 1990). Even "when a Confrontation Clause violation has occurred" habeas relief cannot be granted "if the error was harmless." Russ v. Green, No. 04-CV-6079 (VEB), 2009 WL 2958007 at *8 (W.D.N.Y. September 11, 2009) (citing Fuller v. Gorczyk, 273 F.3d 212, 220 (2d Cir. 2001); Mingo v. Artuz, 174 F.3d 73, 78 (2d Cir. 1999)).

An error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623, 637-638 (1993). Moreover,

> [a]ll erroneous rulings that improperly restrict cross-examination under state or federal rules of evidence do not necessarily implicate the Confrontation Clause. Rather, the Constitution only 'guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective, in whatever way, and to whatever extent the defense might wish.'

Harper, 916 F.2d at 57 (quoting Van Arsdall, 475 U.S. at 679); see also Delaware v. Fensterer, 474 U.S. 15, 20 (1985).

Here, the trial court reasonably restricted defense counsel's right to cross-examine Dr. Coron. The trial transcript shows that the trial judge did not refuse the defense an opportunity for effective cross-examination or even erroneously restrict a particular line of questioning. Rather, the court merely refused to allow the defense to *recall* the expert at a later time for the purposes of cross-examination. T. 524-528. Petitioner's defense subsequently waived the right to cross-examine Dr. Coron, during the time permitted by the trial court, as part of its tactical trial strategy. T. 527, 482, 524-528. Defense counsel believed that cross-examining Dr. Coron prior to the Victim's testimony would reinforce the prejudice he perceived from the order of the witnesses' testimony. T. 527. Importantly, the Second Circuit has held that, for the defendant's best advantage "...defense counsel

may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound." Scott v. Fisher, No. 03-CV-6274 (VEB), 2009 WL 2903585 at *31 (W.D.N.Y. September 10, 2009) (quoting U.S. v. Plitman, 194 F.3d 59, 64 (2d Cir. 1999)).

Since the Appellate Division found that it was proper for the expert to testify prior to the Victim, defense counsel was properly afforded an *opportunity* for effective cross-examination immediately following the prosecution's direct examination. Petitioner's defense counsel not only waived this right and opportunity as part of his trial strategy, but did so with full knowledge that the trial court was not going to allow him to recall the expert for cross-examination at a later time. T. 524-528. Because the trial court provided an *opportunity* for the defense to cross-examine Dr. Coron, this Court finds that Petitioner's right to confrontation was not violated and habeas relief is denied. See Harper, 916 F.2d at 57; Van Arsdall, 475 U.S. at 679.

### 4. **Denial of the right to compulsory process**

Petitioner specifically claims that his Sixth Amendment right to compulsory process was violated by the trial court's constructive denial of defense counsel's opportunity to cross-examine Dr. Coron. Pet. ¶24(B). While Petitioner did not directly raise this claim in state court, respondent conceded that,

> ...because the compulsory process
> clause...provides no greater protections of the
> right to discover the identity of witnesses or
> to require the government to produce exculpatory
> evidence than those afforded by the due process
> clause..., it is arguable that petitioner
> exhausted his compulsory process claim by
> arguing that his due process rights had been
> violated in connection with the expert witness's
> testimony.

Respondent's Response to Court's Decision and Order at 2 n. 1 (Docket No. 14) (citing Pennsylvania v. Ritchie, 480 U.S. 39 (1987)). Therefore, the Court will consider this claim exhausted.

The Constitution guarantees a defendant the right "...to have compulsory process for obtaining a witness in his favor...." U.S. Const. amend. VI. This right is violated where a defendant is arbitrarily denied the "opportunity to put on the stand a witness whose testimony would be relevant and material to his defense." Singleton v. Lefkowitz, 583 F.2d 618, 623 (2d Cir. 1978) (citing Washington v. Texas, 388 U.S. 14, 23 (1967).

Essentially, Petitioner asserts that, by allowing Dr. Coron to testify before the Victim, his defense was effectively denied a meaningful opportunity for cross-examination thereby denying Petitioner his Sixth Amendment right to compulsory process. Construing Petitioner's claim broadly, the petition "reveals that the gravamen of [Petitioner]'s argument is that the trial court erred when it made a particular evidentiary ruling [i.e., allowing Dr. Coron to testify first]." Egan v. Spitzer, No. 04-CV-6544

(MAT), 2009 WL 2151310 at *6 (W.D.N.Y. July 16, 2009) (noting that when a claim of denial of compulsory process is rooted in an assertion that the trial court made an erroneous evidentiary ruling, it is generally not cognizable on habeas review absent a showing that the error deprived the petitioner of a fundamentally fair trial). For the reasons below, habeas relief is denied.

First, no violation of Petitioner's right to compulsory process occurred because he was never denied the opportunity to call Dr. Coron to the stand as a defense witness. Indeed, defense counsel informed the trial court that he intended to call Dr. Coron as a defense witness, but the record shows that the defense never followed through with its intentions. T. 415(b), 482, 524-528. There is no evidence in the record, and no claim by Petitioner, that the trial court or prosecution interfered in any way with defense counsel's ability to call Dr. Coron to the stand for direct testimony. Therefore, no violation of the right to compulsory process occurred. Based on the language in the petition, the claim is more akin to the Sixth Amendment right to confrontation than it is to the Sixth Amendment right to compulsory process. Having already concluded that Petitioner's right to confrontation was not infringed, habeas relief should be denied.

## V.    CONCLUSION

For the reasons stated above, Timothy Herington's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is hereby dismissed.  Petitioner failed to make a substantial showing of a denial of a constitutional right, and the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253.  The Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgement would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. U.S., 369 U.S. 438 (1962).

IT IS SO ORDERED.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
U.S. District Court Judge.

DATED:    December 4, 2009
          Rochester, New York.